**THOMPSON v. STATE.   (2 Div. 257.)**

(Court of Appeals of Alabama.   June 30, 1923.)

1. **Physicians and surgeons** ⊚⇒6(9)—**Allegation of particular person or disease treated unnecessary in indictment for practicing without obtaining certificate.**

Counts of an indictment substantially in the words of Code 1907, § 7564, as amended by Acts 1915, p. 661, penalizing treating or offering to treat human beings without obtaining a certificate from the state board of medical examiners, *held* sufficient; it not being necessary to allege the particular human being or the disease defendant treated or offered to. treat.

2. **Physicians and surgeons** ⊚⇒6(11)—**Evidence that defendant practiced chiropractic without obtaining certificate authorized affirmative charge.**

Evidence that without obtaining a certificate from the state board of medical examiners, as required by Code 1907, § 7564, as amended by Acts 1915, p. 661, defendant practiced chiropractic by adjusting witness' spinal column and nerves and muscles leading to it, *held* to authorize the affirmative charge.

3. **Physicians and surgeons** ⊚⇒2—**Legislature may ·confer on board power to conduct examinations and issue certificates to practice.**

Code 1907, §§ 1626-1645,' conferring on the state board of medical examiners the power to conduct examinations and issue certificates to practice medicine, is a valid police regulation.

4. **Physicians and surgeons** ⊚⇒6(10)—**In prosecution for practicing without certificate, whether witness had had medical treatment held immaterial.**

In a prosecution for practicing without having obtained a certificate, solicitor's objection to the question whether witness had had medical treatment in his life *held* properly sustained, as the information sought was immaterial.

5. **Physicians and surgeons** ⊚⇒6(10)—**In prosecution for practicing without·certificate, evidence that defendant told witness treatment would relieve him admissible.**

In a prosecution for practicing without having obtained a certificate, evidence that defendant told witness that what he was doing would relieve him was admissible as tending to show that defendant knowingly treated a disease.

6. **Physicians and surgeons** ⊚⇒6(10) — **After proof of treatment of disease, defendant has burden of showing that he had certificate.**

In a· prosecution for practicing without having obtained a certificate, after the state proved that defendant treated a human disease, the burden was on defendant to show that he had obtained the required certificate.

7. **Physicians and surgeons** ⊚⇒6(11½)—**Conviction for practicing without certificate held not to. authorize sentence to "hard labor"; "imprisonment."**

Acts· 1915, p. 661, making it a misdemeanor for one to practice medicine without having obtained a certificate, and providing for punishment by fine and imprisonment, does not authorize a sentence to hard labor in view of Code 1907, § 7620; "imprisonment" meaning the restraint of a man's personal liberty, or coercion exercised upon a person to prevent the free exercise of his powers of locomotion, and "hard labor" meaning a punishment additional to mere imprisonment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Hard Labor; Imprison—Imprisonment.]

Appeal from Circuit Court, Dallas County; Arthur E. Gamble, Judge.

D. C. Thompson was convicted of practicing medicine without license, etc., and appeals. Affirmed.

Charge 3, given for the. state, is as follows:

. "The court charges the jury that it is not necessary for the state to prove that the defendant did not have a certificate of qualification from the state board of medical examiners of the state of Alabama." '

Craig & Craig and W. W. Quarles, all of Selma, for 'appellant.

———

Counts stating no facts constituting the offense, but merely aver a conclusion, are bad. Code 1907, § 7134; Harris v. State, 50 Ala. 127; Hirschfelder v. State, 18 Ala. 112; Higginbotham v. State, 50 Ala. 133. It was error to give the affirmative charge for the state. Grant v. State, 97 Ala. 35, 11 South. 915; Brewer v. State, 113 Ala. 106, 21 South. 355; Taylor v. State, 121 Ala. 24, 25 South. 689. Charge 3 was erroneously given for the state. Goldsmith v. State, 105 Ala. 8, 16 South. 933; Scott v. State, 105 Ala. 57, 16 South. 925, 53 Am. St. Rep. 100; Webb v. State, 106 Ala. 52, 18 South. 491; 1 Mayf. Dig. 174. The sentence to hard labor was void. Acts 1915, p. 661; Ex parte City Council, 79 Ala. 275; Ex parte Brown, 102 Ala. 179, 15 South. 602; Code 1907, §§ 7620, 7627; Kirby v. State, 62 Ala. 51; Ex parte Mayor, 84 Ala. 21; 21 Cyc. 1742; Gunter v. State, 83 Ala. 96, 3 South. 600.

Harwell G. Davis, Atty. Gen., for the State.

No brief reached the Reporter.

FOSTER, J. [1] The defendant, appellant, was convicted of treating or offering to treat diseases of human beings without having first obtained a certificate of qualification from the state board of medical examiners of Alabama.

The first and second counts of the indictment were substantially in the words of the statute. Section 7564, Code 1907, as amended. Acts 1915, p. 661. The third count was withdrawn, and the fourth count charged that defendant did treat or offer to treat C. A. Patterson, a human being, for rheumatism, or other disease of human beings for a reward without having first obtained a certificate of qualification, etc.

[2] Demurrers to the first and second counts were properly overruled; it was not necessary to state what particular human being, or what particular human disease, the defendant treated or offered to treat. The only witness examined was one C. A. Patterson, who testified that the defendant treated him for rheumatism or writer's cramp, for which witness paid defendant; that the system by which defendant treated him was known as chiropractic; and that was what the defendant called it. The defendant adjusted the spinal column and the nerves and muscles leading to it. There was a sign on the door or entrance to defendant's place of business as follows: "Dr. D. C. Thompson, Chiropractor."

"Chiropractic is hereby defined to be the science that teaches health in anatomic relation and disease or abnormality in anatomic disrelation, and teaches the art of restoring anatomic relation by a process of adjusting by hand." (Copied from the Constitution of the International Association of Chiropractic Schools and Colleges.) The Palmer conception of the definition is as follows:

"Chiropractic is the philosophy science and art of things natural, and a system of adjusting the subluxated vertebræ of the spinal column, by hand, for the restoration of health."

Its followers assert that disease is caused by pressure on the spinal nerves and can be eradicated by adjusting the vertebræ. Chiropractors claim that nearly all diseases are but manifestations of vertabral subluxations; that all pathologic conditions are due to subluxated vertebræ impinging on spinal nerves. They diagnose and treat human ailments, and before practicing "chiropractic" must obtain a certificate of qualification from the state board of medical examiners.

[3] The statutory requirement that all persons who treat or offer to treat human diseases as a profession and for a livelihood shall first obtain a certificate of qualification from the state board of medical examiners is a police regulation, and the Legislature may prescribe a test by which such qualification may be determined, and may confer authority on a board to conduct the examination for this purpose. The state board of medical examiners has been designated by law to conduct such examinations and issue certificates of qualification. Code 1907, §§ 1626–1645; Williamson v. State, 16 Ala. App. 392, 78 South. 308.

[4] The objection of the solicitor to the question asked the witness Patterson, "Have you had medical treatment in your life?" was properly sustained. The information sought was immaterial to the inquiry involved. 4 Michie's Ala. Dig. p. 122, § 196.

[5] The objection of the defendant to the question asked the witness Patterson, "Did he state what he said he was doing would relieve that ill?" was properly overruled. The tendency of the evidence was to show that the defendant knowingly treated the disease from which witness was suffering. 4 Michie's Ala. Dig. p. 122, § 196.

There was no conflict in the evidence, and the court did not err in giving the affirmative charge requested by the state and in refusing the affirmative charge for the defendant.

[6] The court did not err in giving charge No. 3 requested by the state; as the state had proved that defendant treated human disease, the burden was cast on the defendant to show that he had obtained the certificate of qualification required by law. Porter v. State, 58 Ala. 66.

[7] The court sentenced the defendant to hard labor for Dallas county for 30 days. The statute provides for punishment by fine, and as additional punishment "imprisonment." Acts 1915, p. 661. "Imprisonment" means "the act of putting or confining a man in prison; the restraint of a man's personal liberty; coercion exercised upon a person to

prevent the free exercise of his powers of locomotion." 21 Cyc. p. 1742.

"Hard labor" means "a punishment, additional to mere imprisonment, sometimes imposed upon convicts sentenced to a penitentiary." 21 Cyc. p. 361; Gunter v. State, 83 Ala. 96, 3 South. 600.

The distinction between "imprisonment" and "hard labor" for the county is recognized in section 7620 of the Code of 1907, wherein imprisonment in the penitentiary expressly includes hard labor for the state, but "imprisonment" and "hard labor" for the county are separate and distinct and neither includes the other. The offense charged is a misdemeanor, and imprisonment under the statute creating the offense means imprisonment in the county jail, and not hard labor for the county. Section 7620, Code 1907; Kirby v. State, 62 Ala. 51.

The judgment of conviction is affirmed, and that part of the judgment sentencing defendant to hard labor for Dallas county for 30 days is reversed, and the cause is remanded for proper sentence.